**IN THE UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF ILLINOIS**
**EASTERN DIVISION**

| | |
|---|---|
| ANN M. MCKENNEY-BECKER and, ) | |
| FRED BECKER, ) | |
| ) | |
| Plaintiffs, ) | |
| ) | |
| v. ) | No. 14-cv-04514 |
| ) | |
| SAFEGUARD PROPERTIES, LLC, ) | |
| BANK OF AMERICA, N.A., and ) | |
| ATC REAL ESTATE SERVICES, LLC, ) | |
| ) | |
| Defendants. ) | |

## MEMORANDUM OPINION AND ORDER

AMY J. ST. EVE, District Court Judge:

Before the Court are two motions to dismiss. Defendants Safeguard Properties, LLC ("Safeguard") and ATC Real Estate Services, LLC ("ATC") filed their Motion to Dismiss Plaintiffs' Complaint pursuant to Federal Rule of Civil Procedure 12(b)(1) and 12(b)(6). (*See* R.21, Defs. Safeguard and ATC's Motion to Dismiss.) Defendant Bank of America, N.A. ("Bank of America") filed its Motion to Dismiss Plaintiffs' Complaint pursuant to Federal Rule of Civil Procedure 12(b)(6) and requested abstention of the federal action. (*See* R.19, Def. Bank of America's Motion to Dismiss.)[1] For the following reasons, the Court grants in part and denies in part Defendants Safeguard and ATC's Motion to Dismiss and grants in part and denies in part Defendant Bank of America's Motion to Dismiss. The Court also denies Bank of America's motion to dismiss on the basis of abstention under *Colorado River*.

---

[1] Bank of America's memorandum in support of its motion to dismiss is limited to arguments relating to Count II of Plaintiffs' Complaint, as it notes that the remaining counts (Counts I, III-VI) are not directed to Bank of America. (*See* R.19-1, Def. Bank of America's Mem. in Supp., at 3, n. 4.) As such, the portions of this Opinion relating to Counts I, III-VI are applicable only to Defendants Safeguard and ATC.

# BACKGROUND

Plaintiffs Ann M. McKenney-Becker ("Mrs. McKenney-Becker") and Fred Becker ("Mr. Becker") (collectively, the "Beckers" or "Plaintiffs") have filed an six-count complaint against Defendants Safeguard, ATC, and Bank of America (collectively, "all Defendants"). Specifically, Plaintiffs allege (1) violations of the Fair Debt Collection Practices Act (15 U.S.C. §1692f) against Safeguard and ATC (Count I); (2) violations of the Illinois Consumer Fraud and Deceptive Business Practices Act (815 ILCS 505/1 *et seq*.) against all Defendants (Count II); (3) trespass against Safeguard and ATC (Counts III and IV); and (4) conversion against Safeguard and ATC (Counts V and VI). (*See generally* R.1, Compl.)

## I.    The Parties

Plaintiffs are both natural persons and residents of McHenry County, Illinois. (R.1, ¶¶ 3, 4.)[2] Defendants Safeguard and ATC are each individual corporations that contract with mortgage lending and servicing institutions to, as a principal purpose, manage and preserve at-risk and foreclosed properties. (R.1, ¶¶ 5, 6.) Specifically, Safeguard and ATC determine the occupancy status of properties and secure vacant properties for lending and servicing institutions. (R.1, ¶ 8.) Defendant Bank of America is a National Bank, headquartered in North Carolina. (R.1, ¶ 7.)

---

[2] The facts presented in the Background are taken from the Complaint (R.1), and its attachments, and are presumed true for the purpose of resolving the pending motion. *See Bonte v. U.S. Bank, N.A.,* 624 F.3d 461, 463 (7th Cir. 2010) (citing *Ashcroft v. Iqbal,* 556 U.S. 662, 129 S.Ct. 1937, 1949, 173 L.Ed.2d 868 (2009)) ("The complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face"); *see also Ezekiel v. Michel,* 66 F.3d 894, 897 (7th Cir. 1995) (stating that when reviewing a motion to dismiss brought under Rule 12(b)(1), this court "must accept as true all well-pleaded factual allegations, and draw reasonable inferences in favor of the plaintiff"); *AnchorBank FSB v. Hofer*, 649 F.3d 610, 614 (7th Cir. 2011) (applying the same standard to motions to dismiss pursuant to Rule 12(b)(6)).

## II.    The Property & Foreclosure Proceedings

Mrs. McKenney-Becker owns a personal residence located at 5713 Island Road in Chemung, McHenry County, Illinois (the "Property"). (R.1, ¶¶ 11, 12.)  To finance the Property, Mrs. McKenney-Becker entered into a mortgage agreement with Bank of America, incurring a debt. (R.1, ¶ 12; R.19-2, Promissory Note between Ms. McKenney-Becker and Bank of America attached as Ex. 1 to R.19-1, Def. Bank of America's Motion to Dismiss; R.19-3, Mortgage for the Property, attached as Ex. 2 to R.19-1, Def. Bank of America's Motion to Dismiss.)[3]  She made mortgage payments pursuant to the agreement until she incurred financial hardship and defaulted on her mortgage. (R.1, ¶ 13.)  Bank of America subsequently filed a foreclosure lawsuit in the Circuit Court of the 22nd Judicial Circuit in McHenry, Illinois seeking deficiency judgment and possession of the Property ("State Court Foreclosure Action"). (R.1, ¶ 15.)  As of June 2013, the Circuit Court had not entered any order allowing Defendants access to the Property. (R.1, ¶ 36.)

## III.   Defendants Safeguard and ATC Enter the Property

The Beckers temporarily left the Property for a week in June 2013, leaving it secured and locked with numerous items of their personal property inside. (R.1, ¶¶ 18-20.)  During that time, no one other than the Beckers had a key or otherwise had access to the Property, nor did anyone have permission to access the Property. (R.1, ¶ 24.)  Prior to the Beckers' return, Safeguard

---

[3]  The Court generally may only consider Plaintiffs' Complaint when ruling on Defendants' Rule 12(b)(6) motions. *See Burke v. 401 N. Wabash Venture, LLC*, 714 F.3d 501, 505 (7th Cir. 2013).  An exception exists, however, for consideration of documents attached to the complaint. *See* Fed. R. Civ. P. 10(c) ("A copy of a written instrument that is an exhibit to a pleading is a part of the pleading for all purposes"); *see also Tierney v. Vahle,* 304 F.3d 734, 738 (7th Cir. 2002) ("Because the letter was attached to the complaint, it became a part of it for all purposes, and so the judge could consider it in deciding the motion to dismiss without having to convert the motion to one for summary judgment") (internal citations omitted).  In addition, the Court considers documents which Defendant Bank of America attaches to its Motion to Dismiss (R.19-2; R.19-3; R.19-4) without converting it to a motion for summary judgment because Plaintiffs' Complaint references them (R.1, ¶¶ 12, 13) and they are central to Plaintiffs' claims. *See Burke*, 714 F.3d at 505.

and/or ATC (at the direction of Bank of America) entered the Property and "caused dispossession and disablement" of the Property by removing all of the Beckers' personal property and changing the locks. (R.1, ¶ 21.) Safeguard and/or ATC, at the direction, authorization, and approval of Bank of America, placed a lockbox on the Property's entrance door, and placed a material substantially similar to glue into the remaining locks that rendered the locks inoperable. (R.1, ¶¶ 22, 26-29; *see also* R.1-1, Safeguard Work Order Update, attached as Ex. A to R.1, Compl.) According to Safeguard's Work Order Update, Safeguard entered the Property on June 18, 2013, classified the Property as "Vacant", installed a lockbox, removed "Interior Debris" (including construction materials, clothes, and furniture) and capped the gas line. (*See* R.1-1.) The Beckers allege that Safeguard admits that Bank of America installed the lockbox and that Safeguard hired ATC as a subcontractor to do onsite work at the Property. (R.1, ¶¶ 26, 28.) At the time Defendants caused dispossession and disablement of the Property and the personal possessions within it, the Property was claimed as collateral by Bank of America, through an enforceable security interest, namely a mortgage. (R.1, ¶ 35.) Safeguard and ATC acted at the direction and authorization of Bank of America. (R.1, ¶ 27.)

## LEGAL STANDARD

Federal Rule of Civil Procedure 12(b)(1) allows a party to raise as a defense, by motion, a federal court's lack of subject-matter jurisdiction. Fed. R. Civ. P. 12(b)(1). As with a Rule 12(b)(6) motion, when the defendant challenges the sufficiency of the allegations regarding subject matter jurisdiction, the district court must "accept as true all well-pleaded factual allegations and draw all reasonable inferences in favor of the plaintiff." *St. John's United Church of Christ v. City of Chicago,* 502 F.3d 616, 625 (7th Cir. 2007) (quoting *Long v. Shorebank Dev. Corp.,* 182 F.3d 548, 554 (7th Cir. 1999)); *see also Apex Digital, Inc. v. Sears,*

*Roebuck & Co.*, 572 F.3d 440, 443-444 (7th Cir. 2009). The proponent of federal jurisdiction bears the burden of establishing subject matter jurisdiction. *Meridian Sec. Ins. Co. v. Sadowski,* 441 F.3d 536, 540 (7th Cir. 2006) ("[The] party that chooses federal court [must] set out the basis of federal jurisdiction and prove any contested factual allegation."); *see also Glaser v. Wound Care Consultants, Inc.,* 570 F.3d 907, 913 (7th Cir. 2009) ("The burden of proof on a 12(b)(1) issue is on the party asserting jurisdiction"). If necessary, a district court may also look beyond the jurisdictional allegations to evidence outside of the pleadings to determine whether federal subject-matter jurisdiction exists. *St. John's,* 502 F.3d at 616.

"A motion under Rule 12(b)(6) challenges the sufficiency of the complaint to state a claim upon which relief may be granted." *Hallinan v. Fraternal Order of Police of Chi. Lodge No. 7,* 570 F.3d 811, 820 (7th Cir. 2009). Under Rule 8(a)(2), a complaint must include "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). The short and plain statement under Rule 8(a)(2) does not need to have "'detailed factual allegations' but must have 'more than an unadorned, the-defendant-unlawfully-harmed-me accusation.'" *Ashcroft v. Iqbal,* 556 U.S. 662, 129 S.Ct. 1937, 1949, 173 L.Ed.2d 868 (2009) (quoting *Bell Atlantic Corp. v. Twombly,* 550 U.S. 544, 555, 127 S.Ct. 1955, 167 L.Ed.2d 929 (2007)). Therefore, only a complaint "that states a plausible claim for relief survives a motion to dismiss." *Iqbal,* 129 S.Ct. at 1950. "In evaluating the sufficiency of the complaint, [courts] view it in the light most favorable to the plaintiff, taking as true all well-pleaded factual allegations and making all possible inferences from the allegations in the plaintiff's favor." *AnchorBank, FSB v. Hofer,* 649 F.3d 610, 614 (7th Cir. 2011). This principle, however, is inapplicable to legal conclusions; "[t]hreadbare recitals of the elements of a cause of action, supported by mere

conclusory statements, do not suffice." *Iqbal,* 129 S.Ct. at 1949 (citing *Twombly,* 550 U.S. at 555).

## ANALYSIS

**I.    Plaintiffs' Claim Under the Fair Debt Collection Practices Act (Count I)**

**A.    Plaintiff Fred Becker Has Standing**

Defendants Safeguard and ATC claim that Plaintiff Fred Becker has no standing and therefore no claim arising under the Fair Debt Collection Practices Act ("FDCPA"), 15 U.S.C. §§ 1692-1692p, as no factual allegations exist demonstrating that Mr. Becker has ever been indebted to any of the Defendants.  (R.22, Defs. Safeguard and ATC's Mem. in Supp., at 4.) Plaintiffs respond that even though Mr. Becker was never indebted to Defendants, he has standing to sue because the allegedly unfair actions taken against him fall within the zone of interest of section 1692f.  (R.35, Pltfs. Response, at 2-3.)

The purpose of the FDCPA is to protect debtors from certain abusive debt collection practices.  *In re Rinaldi*, 487 B.R. 516, 534 (E.D. Wis. 2013).  Section 1692f of the FDCPA "generally prohibits using 'unfair or unconscionable means to collect or attempt to collect any debt.'"  *Todd v. Collecto, Inc.*, 731 F.3d 734, 736 (7th Cir. 2013); *see also* 15 U.S.C. § 1692f ("A debt collector may not use unfair or unconscionable means to collect or attempt to collect any debt").  The provision includes a non-exhaustive list of examples of specific practices that are unfair per se.  *Todd*, 731 F.3d at 736.  Mr. Becker alleges that Safeguard Properties violated section 1692f by taking nonjudicial action—breaking into his residence and taking his possessions—when there was no legal right to possession of either the Property or his personal property.  (R.35, at 3; *see also* R.1, Compl., ¶¶ 16-43).  Although the list of exemplary conduct

in 15 U.S.C. § 1692f is non-exhaustive, Mr. Becker's allegations fall squarely into section

1692f(6), which proscribes:

> Taking or threatening to take any nonjudicial action to effect dispossession or disablement of property if—
>
> > (A) there is no present right to possession of the property claimed as collateral through an enforceable security interest;
> >
> > (B) there is no present intention to take possession of the property; or
> >
> > (C) the property is exempt by law from such dispossession or disablement.

15 U.S.C. § 1692f(6).  The Seventh Circuit instructs courts to analyze each provision of the

FDCPA individually "to determine who falls within the scope of its protection and thus to decide

'with respect to' whom the provision can be violated." *Todd*, 731 F.3d at 738.  "Absent different

indications from statutory text, only a person within a statutory provision's 'zone of interest' has

standing to sue under it." *Id.* at 736 (citing *Harzewski v. Guidant Corp.*, 489 F.3d 799, 803 (7th

Cir. 2007); *Kyles v. J.K. Guardian Sec. Servs. Inc.*, 222 F.3d 289, 294 (7th Cir. 2000)).  The

liability provision of the FDCPA indicates "any debt collector who fails to comply with any

provision of this subchapter *with respect to any person* is liable to such person." *Todd*, 731 F.3d

at 737 (citing 15 U.S.C. § 1692k(a)) (emphasis added).  As applied to section 1692f, "anyone

aggrieved by a debt collector's unfair or unconscionable collection practices can fall within the

provision's zone of interest." *Id.* at 738.

The Seventh Circuit's recognition that "anyone aggrieved" can sue under section 1692f,

includes non-debtors.  *See Todd*, 731 F.3d at 738 (finding plaintiff had standing to sue under

1692f even though he was not the consumer from which the defendant collector sought to

collect); *see also Swearingen v. Portfolio Recovery Assoc., LLC*, 892 F.Supp.2d 987, 991 (N.D.

Ill. 2012) (collecting cases) (explaining "courts have held that non-debtors may recover under the

FDCPA, where prohibited conduct was either experienced by or directed toward the non-debtor"
and finding non-debtor had standing to sue where debt collection threats were made to
non-debtor); *Garrett v. Empire Cooler Serv., Inc.*, No. 03 C 9137, 2004 WL 838032, at *2 (N.D.
Ill. Apr. 16, 2004) (finding non-debtor had standing to sue where debt collection practices were
directed towards his property); *Flowers v. Accelerated Bureau of Collections, Inc.*, No. 96 C
4003, 1997 WL 136313, *7 (N.D. Ill. Mar. 19, 1997) (finding debtor's wife had standing to sue
where "the alleged debt collection practices were both experienced by and directed towards"
her).

Mr. Becker has alleged that Safeguard and/or ATC (at the direction of Bank of America)
entered the Property, without a present right to possession and in connection with a debt owed by
Ms. McKenney-Becker, and removed numerous items of his personal property. (R.1, ¶¶ 18, 21.)
The Court finds that Mr. Becker has standing to sue under section 1692f for Safeguard and
ATC's alleged violations of that subchapter.[4]

### B.     Plaintiffs Have Adequately Alleged a Claim Under the FDCPA

Plaintiffs have alleged that Safeguard and ATC have violated the FDCPA by e.g.,
entering the Property in June 2013 without authorization, removing all of the Beckers' personal
property, placing a lockbox on the Property entrance, and rendering the remaining locks
inoperable. (R.1, ¶¶ 21-24.) Defendants Safeguard and ATC argue that neither of them were
acting as "debt collectors" as required for a violation under the FDCPA. (*See* R.22, at 4-7; R.41,
Defs. Safeguard and ATC's Reply, at 2-4.) The parties do not dispute that the FDCPA's
provisions generally apply only to debt collectors. (*See* R.22, at 4; R.35, at 3-4.) Disagreement

---

[4] Mr. Becker has standing to sue for his own injuries even though he is not the consumer from
whom Defendants seek to collect debt, but he does not have standing under section 1692f to sue on Ms.
McKenney-Becker's behalf. *See Todd*, 731 F.3d at 739 (emphasizing that non-debtor plaintiff can only
sue under 1692f for his own injuries but does not have standing on behalf of the debtor).

arises, however, regarding whether Defendants Safeguard and ATC fall within the FDCPA's definition of "debt collector" as applied to the "unfair or unconscionable" practices of section 1692f(6). *See* 15 U.S.C. § 1692a(6), § 1692f(6).

The purposes of the FDCPA are "to eliminate abusive debt collection practices by debt collectors, to insure that those debt collectors who refrain from using abusive debt collection practices are not competitively disadvantaged, and to promote consistent State action to protect consumers against debt collection abuses." 15 U.S.C. § 1692e. In order for the FDCPA to apply, the defendant must satisfy the requirements of a "debt collector". *See Ruth v. Triumph P'ships*, 577 F.3d 790, 796 (7th Cir. 2009) ("The FDCPA regulates only the conduct of 'debt collectors.'"). The FDCPA defines a "debt collector" as "any person who uses any instrumentality of interstate commerce or the mails in any business the principal purpose of which is the collection of any debts, or who regularly collects or attempts to collect, directly or indirectly, debts owed or due or asserted to be owed or due another." 15 U.S.C. § 1692a(6). The definition of "debt collector" is expanded "[f]or the purpose of section 1692f(6)" and "includes any person who uses any instrumentality of interstate commerce or the mails in any business the principal purpose of which is the enforcement of security interests." *Id; see also Bywater v. Wells Fargo Bank, N.A.,* No. 13 C 4415, 2014 WL 1256103, at *5 (N.D. Ill. Mar. 24, 2014) (recognizing the expansion of "debt collector" for purposes of liability under section 1692f(6)). Under section 1672f, a "debt collector may not use unfair or unconscionable means to collect or attempt to collect any debt," including "[t]aking or threatening to take any nonjudicial action to effect dispossession or disablement of property if," among other circumstances, "there is no present right to possession of the property claimed as collateral through an enforceable security interest." 15 U.S.C. § 1692f(6)(A).

Although Defendants Safeguard and ATC disagree regarding whether their principal business purposes include enforcement of security interests, they admit that Safeguard is in the business of maintaining property and further acknowledge that courts in this District have addressed whether property maintenance activities undertaken during the mortgage foreclosure process fall within the purview of the FDCPA. (*See* R.22, at 5; *see also* R.1, ¶ 5 (alleging that Safeguard and ATC are "corporation[s] that contract[] with mortgage lending and servicing institutions to, as [their] principal purpose, manage and preserve at-risk and foreclose[d] properties").)[5]

Plaintiffs seek recovery for Defendants Safeguard and ATC's June 2013 entry into the Property, removal of personal possessions and preventing Plaintiffs access to the Property by changing or damaging the locks and securing lockboxes on the Property, at a time when no court order had been issued allowing access to the Property. (*See e.g.,* R.1, ¶¶ 21-24, 33-36.) Plaintiffs allege that Safeguard and ATC took "non-judicial action to effect dispossession and disablement of property" (*see* R.1, ¶ 46), "in their attempts to collect the debt allegedly owed by Plaintiff" (*id.*, ¶ 52). Similar factual situations have stated a claim under section 1692f(6)(A) of the FDCPA. *See e.g.*, *Bywater*, 2014 WL 1256103, at *4-5 (finding plaintiff's allegations that defendant, acting in concert, changed the locks on plaintiff's property, removed personal property from within, and destroyed or damaged other personal property in an effort to evict plaintiff to be sufficient to bring defendants within the scope of section 1692a(6)'s expanded

---

[5] Plaintiffs also allege that Safeguard's "principal purpose is the enforcement of security interests via the use of instrumentalities of interstate commerce." (R.1, ¶¶ 5, 6, 32.) Plaintiff further alleges that Safeguard "is thus considered a debt collector for the purposes of § 1692f(6)." (R.1, ¶¶ 5, 6.) These allegations are conclusory rather than factual and therefore are insufficient. *See Jeffries v. Wells Fargo Bank, NA*, No. 1-cv-5889, 2011 WL 5023396, at *5 (N.D. Ill. Oct. 19, 2011) (finding plaintiff's allegations that "all defendants are debt collectors" to be conclusory); *see also Evan Law Grp. LLC, Taylor*, 2010 WL 5135904, at *2 (N.D. Ill. Dec. 9, 2009) (quoting *Twombly*, 550 U.S. at 555) ("[W]e are not bound to accept as true a legal conclusion couched as a factual allegation").

definition of a "debt collector"); *Frazier v. U.S. Bank Nat'l Ass'n*, No. 11 C 8775, 2013 WL 1337263, at *9 (N.D. Ill. Mar. 29, 2013) (denying motion to dismiss plaintiff's claim under section 1692f(6)(A) where plaintiff alleged the unauthorized entry of defendants and their agents was in furtherance of efforts to secure property and collect debt for plaintiff's lender); *Flippin v. Aurora Bank, FSB*, No. 12 C 1996, 2012 WL 3260449, at *2 (N.D. Ill. Aug. 8, 2012) (denying motion to dismiss FDCPA allegations that defendant turned off the water and changed the locks at plaintiff's property without a valid court order rendered defendant a "debt collector" for the purpose of section 1692f); *Matthews v. Homecoming Fin. Network*, No. 03 C 3115, 2005 WL 2387688, at *4 (N.D. Ill. Sept. 26, 2005) (finding allegations that defendants forcibly entered plaintiff's home, removed personal property and changed the locks when they did not have a right to possess the house until a later date to be sufficient to state a claim under section 1692f(6)(A) of the FDCPA).

Defendants Safeguard and ATC argue that their actions do not constitute collection of debt, relying on two cases from this District finding the plaintiff's claims insufficient to state a section 1692f(6) claim. These cases, however, are distinguishable. First, in *Gordon v. Bank of New York Mellon Corp.*, the defendants broke into and trashed the plaintiffs' home, and removed the plaintiffs' personal belongings. 964 F.Supp.2d 937, 948 (N.D. Ill. 2013). The *Gordon* court noted, however, that the plaintiffs made no allegation that the defendants acts were done in an attempt to collect a debt.[6] *Id.* at 949. Indeed, the *Gordon* plaintiffs alleged that they purchased the property at issue with cash and had no outstanding loans or mortgages. *Id.* Here, the

---

[6] Defendants' reliance on the *Gordon* court's finding that breaking into a home, removing personal belongings and/or changing the locks on a home to be not "inherently associated with the collection of a debt" (*see* R.22, at 6) is also misplaced as the *Gordon* court's analysis was not directed to whether defendants were "debt collectors," but rather to whether the plaintiffs met the FDCPA's definition of "consumer" under section 1692a(3) based on an alleged obligation to pay a debt. *See Gordon*, 964 F.Supp.2d at 948-49.

Beckers have alleged debt owed to Bank of America for unpaid portions of the Property's mortgage. (R.1, ¶¶ 12-13.) The Beckers also have alleged that Safeguard and ATC took their actions at the direction of Bank of America. (R.1, ¶¶ 35, 39, 43, 48, 52.) Second, the circumstances in *Alqaq v. CitiMortgage, Inc.* are similarly distinguishable. In *Alqaq*, the foreclosure proceedings were completed and any action taken by the defendants (including Safeguard) was found to be incidental to debt collection and, therefore, insufficient to constitute "enforcement of a security interest" as required by section 1692f(6). *Alqaq*, No. 13 C 5130, 2014 WL 1689685, at *3-4. (N.D. Ill. Apr. 29, 2014). In this case, the alleged debt is outstanding on the Property and the Property has not been foreclosed—rendering Bank of America's security interest alive and well.

Plaintiffs have properly alleged Safeguard and ATC's role as "debt collectors". "Bearing in mind that section 1692f is a provision of 'general application' to unfair and unconscionable behavior" the Court will not dismiss Plaintiffs' timely allegations. *See Frazier*, 2013 WL 1337263, at *10 (citing *McMilan v. Collection Professionals Inc.*, 455 F.3d 754, 764 (7th Cir. 2006)).

Accordingly, because both Plaintiffs have adequately alleged an FDCPA claim, the Court has original jurisdiction over at least one claim in the action and can exercise its supplemental jurisdiction over Plaintiffs' state law claims. *See Exxon Mobil Corp. v. Allapattah Serv., Inc.*, 545 U.S. 546, 554, 125 S.Ct. 2611, 162 L.Ed.2d 502 (2005) ("for a federal court to invoke supplemental jurisdiction [ ], it must first have original jurisdiction over at least one claim in the action"). Before turning to Plaintiffs' state law claims, however, the Court addresses Bank of America's arguments for abstention.

## II.     Abstention

Defendant Bank of America moves for the Court to refrain from hearing this case under the *Colorado River* abstention doctrine due to the pending State Court Foreclosure Action.  (*See* R.19-1, Def. Bank of America's Mem. in Supp., at 5-8; R.42, Def. Bank of America's Reply, at 2-5.)  Plaintiffs respond that the State Court Foreclosure Action is not parallel to the instant litigation as they do not arise out of the same facts and involve different parties and different issues.  (*See* R.36, Pltfs. Response, at 2-4.)

### A.     State Court Foreclosure Action

Bank of America filed the State Court Foreclosure Action on June 22, 2012.  After Bank of America filed a motion for partial summary judgment against Ms. McKenney-Becker, she filed a petition for injunctive relief against Bank of America.  (R.19-1, at 2.)  Ms. McKenney-Becker also filed counterclaims against Bank of America alleging trespass, conversion, negligence, and willful and wanton misconduct.  (R.19-4, Counterclaims, *Bank of America, N.A. v. McKenney et al.*, 12 CH 1613, (Cir. Ct., 22nd Jud. Cir., McHenry Cnty., Ill), attached as Ex. 3 to R.19-1, Def. Bank of America's Mem. in Supp.)  Ms. McKenney-Becker also filed a Third-Party Complaint against Defendants Safeguard and ATC in the State Court Foreclosure Action and Mr. Becker filed a petition to intervene.  On July 8, 2013, Ms. McKenney-Becker filed a motion for punitive damages against all Defendants in the State Court Foreclosure Action.  A few months later, she filed an Emergency Motion for Additional Injunctive Relief and Sanctions against all Defendants and submitted a copy of the Illinois Attorney General's Complaint filed against Safeguard in the Circuit Court of Cook County, Illinois.  (*See* R.1-1, Att'y General Compl., attached as Ex. B. to R.1, Compl.).  On March 31, 2014, Plaintiffs voluntarily dismissed the Counterclaims and the Third-Party Complaint, and

withdrew their motion for sanctions. The Court issued an order on July 23, 2014, substituting Nationstar Mortgage, LLC ("Nationstar") for Bank of America as the plaintiff in the State Court Foreclosure Action. As of August, 2014, the State Court Foreclosure Action remained pending.

### B. Legal Standard

Federal courts have a "virtually unflagging obligation ... to exercise the jurisdiction given them." *Colorado River Water Conservation Dist. v. United States*, 424 U.S. 800, 817, 96 S.Ct. 1236, 47 L.Ed.2d 483 (1976). "This duty to exercise jurisdiction rests on 'the undisputed constitutional principle that Congress, *and not the Judiciary,* defines the scope of federal jurisdiction within the constitutionally permissible bounds.'" *Adkins v. VIM Recycling, Inc.*, 644 F.3d 483, 496 (7th Cir. 2011) (emphasis added) (citing *New Orleans Public Serv., Inc. v. Council of City of New Orleans,* 491 U.S. 350, 359, 109 S.Ct. 2506, 105 L.Ed.2d 298 (1989); *see also Cohens v. Virginia,* 19 U.S. 264, 404, 6 Wheat. 264, 5 L.Ed. 257 (1821) (federal courts "have no more right to decline the exercise of jurisdiction which is given, than to usurp that which is not given").)

Accordingly, a federal court's ability to abstain from exercising federal jurisdiction "is the exception, not the rule," and can be justified only in exceptional circumstances. *Ankenbrandt v. Richards,* 504 U.S. 689, 705, 112 S.Ct. 2206, 119 L.Ed.2d 468 (1992), quoting *Colorado River,* 424 U.S. at 813; *see also R.C. Wegman Constr. Co. v. Admiral Ins. Co.*, 687 F.3d 362, 364 (7th Cir. 2012) (quotations omitted) ("[A] federal district court may abstain in favor of a state court in which a parallel suit is pending if exceptional circumstances warrant an abdication of federal jurisdiction and not merely a delay in the proceeding in the district court"). Exceptional circumstances exist "where denying a federal forum would clearly serve an important countervailing interest, such as considerations of proper constitutional adjudication, regard for

federal-state relations, or wise judicial administration." *Adkins v. VIM Recycling, Inc.*, 644 F.3d 483, 496-97 (7th Cir. 2011) (citing *Quackenbush v. Allstate Ins. Co.*, 517 U.S. 706, 716, 116 S.Ct. 1712, 135 L.Ed.2d 1 (1996) (internal quotation marks omitted)); *see also Huon v. Johnson & Bell, Ltd.*, 657 F.3d 641, 645 (7th Cir. 2011) (explaining the *Colorado River* doctrine allows "federal courts in some exceptional cases to defer to a concurrent state-court case as a matter of 'wise judicial administration, giving regard to conservation of judicial resources and comprehensive disposition of litigation").

In determining whether abstention is appropriate, "a district court must first evaluate whether the federal and state cases are parallel." *Huon*, 657 F.3d at 646. Suits are parallel when substantially the same parties are contemporaneously litigating substantially the same issues in another forum." *Id.* If the proceedings are not parallel, the *Colorado River* abstention doctrine does not apply and a stay is not proper. *Id.* (citations omitted).

## C. The State Court Foreclosure Action and Federal Litigation Are Not Parallel

Here, the federal-court suit and the state-court suit are not parallel. The parties in the State Court Foreclosure Action differ from those in this federal litigation. Bank of America contends that it is still involved in the State Court Foreclosure Action, however, it also states that it is "no longer the servicer of the Loan or the named foreclosing party in the State Court Foreclosure Action." (R.19-1, at 6, n.5.) Nationstar has been substituted as the plaintiff in that action and Bank of America does not assert a continuing business relationship with Nationstar, but rather argues, without citing any case law, that because it is the originator of the Loan, it is "necessarily involve[d]" in the State Court Foreclosure Action. This argument is unpersuasive. Bank of America is no longer a party to the State Court Foreclosure Action. Indeed, because McKenney-Becker's Third-Party Complaint has been dismissed and Bank of America has been

substituted by Nationstar, no Defendant in the federal action is a party in the State Court Foreclosure Action. Although formal symmetry is not necessary to parallel state and federal actions, the fact that not a single current Defendant in the federal litigation is a party in the State Court Foreclosure Action weighs against a finding of substantial similarity between the parties. *See AXA Corp. Solutions v. Underwriters Reinsurance Corp.*, 347 F.3d 272 (7th Cir. 2003) (emphasis added) (explaining that while parallel state and federal litigation need not demonstrate formal symmetry, it is sufficient that *substantially the same parties* are contemporaneously litigating substantially the same issues in another forum).

Not only are the parties different, but the legal issues presented in each action differ. Bank of America alleges that "[t]he State Court is more than capable of disposing of all of Plaintiffs' claims, as five of these arise under theories of state law (including Count II (CFA) alleged against BANA), and it has inherent authority and is presumed competent to adjudicate the sixth claim arising under federal law (Count I (Fair Debt Collection Practices Act)). (R.19-1, at 6.) This argument is meritless, however, because according to the parties description of the State Court Foreclosure Action and the Counterclaims provided to the Court, there are not now, nor have there ever been pending claims for violation of the FDCPA or Illinois Consumer Fraud and Deceptive Business Practices Act ("ICFA"). Furthermore, Safeguard and ATC are no longer parties to the State Court Foreclosure Action and the claims of violation of the FDCPA and ICFA brought against them, as well as the conversion and trespass allegations against them are non-existent in the State Court Foreclosure Action. Even if Nationstar—and Bank of America, in whatever sense the State Court Foreclosure Action may still be applicable to it—succeeds in the foreclosure action, and sells the Property to cover any alleged deficiency under the Mortgage and Note, Plaintiffs would still have a separate claim against Bank of America, Safeguard, and

ATC for their actions or authorization of their actions entering the Property and removing Plaintiffs' personal belongings. As such, there is not a substantial likelihood that the state foreclosure action will dispose of Plaintiffs' claims presented in this federal litigation. *See Huon*, 657 F.3d at 646; *Adkins*, 644 F.3d at 499.

Accordingly, the State Court Foreclosure Action and the present federal litigation alleging violations of the FDCPA against Safeguard and ATC, violations of the ICFA against all Defendants, and trespass and conversion against Safeguard and ATC are not parallel under the circumstances. Because the actions are not parallel, the *Colorado River* doctrine does not apply. *See Huon*, 657 F.3d at 646. ("If there is any doubt that cases are parallel, a district court should not abstain"). The Court, therefore, denies Bank of America's motion for abstention under the *Colorado River* doctrine.

## III.    Plaintiffs' Claims Under the ICFA (Count II)

Plaintiffs allege all Defendants violated the Illinois Consumer Fraud and Deceptive Business Practices Act ("ICFA"), 815 ILCS 505/1, *et seq.*, by committing unfair and/or deceptive acts or practices against Plaintiffs. (*See* R.1, ¶¶ 54-67.)

### A.    Plaintiffs' Allegations Do Not Establish Plaintiffs' Consumer Relationship with Defendants Under the ICFA

Defendants Safeguard and ATC argue that the ICFA does not apply in this case because Plaintiffs are not consumers within the meaning of the act. (*See* R.22, at 8.) A "consumer" under the ICFA is defined as "any person who purchases or contracts for the purchase of merchandise not for resale in the ordinary course of his trade or business but for his use or that of a member of his household." 815 ILCS 505/1(e). Specifically, Defendants contend that there are no allegations that Ms. McKenney-Becker and Mr. Becker individually engaged in any trade or commerce with Safeguard or ATC directly or purchased or contracted to purchase any

merchandise from any entity.  (*See* R.22, at 8.)[7]  Accordingly, Defendants contend Plaintiffs

have failed to adequately allege they are "consumers" under the ICFA.  Plaintiffs allege "[e]ach

Plaintiff is a 'consumer' as that term is defined in [the ICFA]."  (R.1, ¶ 56.)  Plaintiffs do not rely

on any additional factual allegations, however, to support this legal conclusion.  As such, it is

inadequate.  *See Evan Law Grp. LLC, Taylor*, 2010 WL 5135904, at *2 (N.D. Ill. Dec. 9, 2009)

(quoting *Twombly*, 550 U.S. at 555) ("[W]e are not bound to accept as true a legal conclusion

couched as a factual allegation"); *see also Iqbal,* 129 S.Ct. at 1949 (citing *Twombly,* 550 U.S. at

555) ("Threadbare recitals of the elements of a cause of action, supported by mere conclusory

statements, do not suffice").  In addition, Plaintiffs' Response Brief merely notes Defendants'

argument and acknowledges their disagreement, but then fails to rebut Defendants' position.

(*See* R.35 at 7.)  Plaintiffs' only statement that seemingly responds relies on a holding in this

District that refused to dismiss ICFA claims alleging unfair practices under similar factual

circumstances.  Specifically, Plaintiffs state: "[i]n denying defendants' motion, the [c]ourt thus

affirmed that plaintiff was a consumer under the CFA under the facts alleged …."  (R.35, at 9

(citing *Bywater*, 2014 WL 1256103, at *5).)  Plaintiffs' reliance on this case, however, is

misplaced, as the *Bywater* court was not confronted with and, therefore, did not directly address

the issue of whether the plaintiffs were consumers under the ICFA.

---

[7] Defendant Bank of America makes a similar argument, although presented as a lack of standing and without any citations to statutory language or case law, asserting that Mr. Becker has no standing to assert any of the claims against Bank of America, because "he never executed the Note or Mortgage, never became a party to them and has no recognizable ownership in or rights to possession of the Property."  (*See* R.19-1, at 7-8.)  This undeveloped argument is considered waived as Seventh Circuit precedent consistently holds that undeveloped, unsupported, perfunctory, or skeletal arguments in briefs are waived.  *See, e.g., Massuda v. Panda Exp., Inc.,* 759 F.3d 779, 783–784 (7th Cir. 2014); *C & N Corp. v. Gregory Kane & Illinois River Winery, Inc.,* 756 F.3d 1024, 1026 (7th Cir. 2014); *United States v. Beavers,* 756 F.3d 1044, 1059 (7th Cir. 2014); *Price v. Board of Educ. of City of Chicago,* 755 F.3d 605, 608 (7th Cir. 2014); *Williams v. Dieball,* 724 F.3d 957, 961 (7th Cir. 2013).

Accordingly, the Court dismisses Plaintiffs' ICFA claims without prejudice with leave to replead. Even if Plaintiffs are found to be "consumers" under the ICFA, however, their claim of deceptive practices under the ICFA against Safeguard and ATC also runs into trouble as Plaintiffs have failed to meet the pleading requirements for their deceptive practices claim under the ICFA, as addressed below.

## B. Deceptive Practices Under the ICFA

The ICFA is "a regulatory and remedial statute intended to protect consumers, borrowers, and business persons against fraud, unfair methods of competition, and other unfair and deceptive business practices." *Batson v. Live Nation Entm't, Inc.*, 746 F.3d 827, 830 (7th Cir. 2014) (citing *Robinson v. Toyota Motor Credit Corp.*, 201 Ill.2d 403, 416-17, 266 Ill.Dec. 879, 775 N.E.2d 951, 960 (2002)). A plaintiff is entitled to recovery under the ICFA when there is unfair *or* deceptive conduct. *See Goldberg v. 401 North Wabash Venture LLC*, 755 F.3d 456, 464 (7th Cir. 2014); *Siegel v. Shell Oil Co.*, 612 F.3d 932, 935 (7th Cir. 2010) (citing *Robinson*, 775 N.E.2d at 960). Unfair or deceptive practices are defined in the ICFA as:

> including but not limited to the use or employment of any deception, fraud, false pretense, false promise, misrepresentation or the concealment, suppression or omission of any material fact, with intent that others rely upon the concealment, suppression or omission of such material fact … in the conduct of any trade or commerce ….

815 ILCS 505/2. In order to state a claim under the ICFA, a plaintiff must allege: (1) a deceptive or unfair act or practice by the defendant; (2) the defendant's intent that the plaintiff rely on the deceptive or unfair practice; and (3) the unfair or deceptive practice occurred during a course of conduct involving trade or commerce. *See Wigod v. Wells Fargo Bank, N.A.*, 673 F.3d 547, 574 (7th Cir. 2012) (citing *Siegel*, 612 F.3d at 934 (citing *Robinson*, 775 N.E. 2d at 951)). In addition, a private cause of action under the ICFA requires a showing of proximate causation.

*See Wigod*, 673 F.3d at 574; *see also Avery v. State Farm Mut. Auto. Ins. Co.*, 835 N.E.2d 801, 861 (Ill. 2005) ("Proximate causation is an element of all private causes of action under the [ICFA]").

The requisite pleading standard for ICFA claims of unfair practices differs from that required for claims of deception or fraud. Namely, claims for violation of the ICFA as to fraud and deception, "are subject to the same heightened pleading standards as other fraud claims; as such they must satisfy the particularity requirements of Rule 9(b)." *Greenberger v. GEICO General Ins. Co.*, 631 F.3d 392, 399 (7th Cir. 2011). Because, however, "neither fraud nor mistake is an element of unfair conduct under Illinois' Consumer Fraud Act, a cause of action for unfair practices under the Consumer Fraud Act need only meet the notice pleading standard of Rule 8(a), not the particularity requirement in Rule 9(b)." *Windy City Metal Fabricators & Supply Inc. v. CIT Tech. Fin. Services, Inc.* 536 F.3d 663, 670 (7th Cir. 2008).

Defendants Safeguard and ATC assert that Plaintiffs' Complaint is "ambiguous regarding whether it is attempting to state an 'unfair' cause of action or a 'deceptive practices' cause of action." (R.41, at 4.) Defendant Bank of America also states "Plaintiffs discuss both unfair and deceptive conduct without identifying which prong is the basis of their claim." (R.19-1, at 8; *see also* R.42, at 8.) Plaintiffs, however, have alleged that "Defendants committed unfair and/or deceptive acts or practices against Plaintiffs." (R.1, ¶ 63.) Because a plaintiff is entitled to recovery under the ICFA when there is unfair *or* deceptive conduct, the Court finds Plaintiffs' allegations sufficient to reflect that they pursue both in Count II. *See Siegel v. Shell Oil Co.*, 612 F.3d 932, 935 (7th Cir. 2010) (citing *Robinson*, 775 N.E.2d at 960). The Court does recognize, however, that there are different pleading standards between unfair and deceptive conduct and to maximize efficiency, clarity, and expediency—and because Plaintiffs have already been given

leave to replead their ICFA claims (as addressed above)—in doing so, Plaintiffs may want to set out their ICFA claims for unfair and deceptive practices as two separate counts. *See e.g.,Vangsness v. Deutsche Bank Nat'l Trust Co.*, No. 12, 2012 WL 5989354, at *5 (N.D. Ill. Nov. 29, 2012).

Although Defendants do not argue that Plaintiffs fail to meet the notice pleading requirement for an unfair practices claim, they take further issue with Plaintiffs' ICFA claim, arguing that Plaintiffs' allegations fail to adequately plead the particularity required for deceptive practices. Specifically, Defendants contend that Plaintiffs fail to allege facts regarding the identity of the person who made the misrepresentation, the time, place and content of the misrepresentation, and the method by which the misrepresentation was communicated to the plaintiff. (*See* R.22, at 8; R.41, at 4; R.19-1, at 9; R.42, at 8-9.) The Court agrees.

Plaintiffs have alleged that Safeguard and ATC broke into their home without permission or a legal basis to do so (R.1, ¶¶ 14-21, 24, 37, 63), removed Plaintiffs' personal property (*id.*, ¶¶ 33-37, 63), and changed locks and rendered existing locks inoperable (*id.*, ¶¶ 22, 63). Plaintiffs have also alleged that Defendants conducted these actions in the absence of a court order or legal basis allowing their entry to the Property. (R.1, ¶¶ 33-37, 63.) Plaintiffs have further alleged that in reliance on Defendants' actions, they hired counsel to advise them on their rights after they were dispossessed of their property. (R.1, ¶¶ 41-42, 65, 67.) Plaintiffs, however, have failed to adequately allege any deception on the part of Safeguard and ATC, as the only allegation is that alleged misrepresentations were made "expressly or by implication" (R.1, ¶ 63(a)), but there are no allegations of fraudulent statements or communications that occurred between Plaintiffs and Safeguard/ATC which, under Illinois law, is a requirement for an action under the ICFA. *See De Bouse v. Bayer*, 922 N.E.2d 309, 316 (Ill. 2009) ("A

consumer cannot maintain an action under the Illinois Consumer Fraud Act when the plaintiff does not receive, directly or indirectly, communication or advertising from the defendant"); *see also Oliveira v Amoco Oil Co.*, 776 N.E.2d 151, 201 Ill. 2d 134 (holding that the plaintiff's claim failed because he did not allege that he had seen, heard, been deceived by, or induced to purchase the goods in question by the defendant's allegedly deceptive statements.).

Plaintiffs' allegations also fail to establish facts in support of Defendants' intent for Plaintiffs to rely on Safeguard and ATC's alleged actions. In particular, Plaintiffs ask the Court to find a reasonable inference that Safeguard and ATC's actions in illegally accessing and disabling or changing the Property's locks and removing personal property were in an attempt "to induce them to believe … they had to leave the property." (*See* R.35, at 11.) In advocating for this inference, Plaintiffs rely on a group of cases that are inapplicable to the claim of deceptive practices made here. Namely, two of the cases upon which Plaintiffs rely, do not address ICFA deceptive practice claims. *See Bywater*, 2014 WL 1256103, at *5 (finding a viable ICFA unfair conduct claim and stating "the Court need not address whether [plaintiff's claim] also states a viable ICFA deceptive practices claim"); *Boyd*, 787 F.Supp.2d 747, 755-57 (N.D. Ill. 2011) (denying motion to dismiss ICFA claim for alleged unfair practices regarding dispossession of plaintiff's home absent a foreclosure order). Plaintiffs' reliance on *Hill v. Wells Fargo Bank, N.A.*, 946 F.Supp.2d 817 (N.D. Ill. 2013) is also misplaced, as the plaintiffs in that case did not rely on the defendant property maintenance company's acts of breaking into their property that was the subject of foreclosure proceedings. *Hill*, 946 F.Supp.2d at 827 ("In addressing deceptiveness, the Hills ignore the break-ins and instead focus on the postings placed on their property.") In addition, the "unfair practice" analysis of these cases finding it reasonable to infer that the defendants actions in forcing the plaintiffs out of their homes showed a belief

that they could forgo or circumvent the foreclosure process, is not a reasonable inference, as supported by the allegations here. First, the cited cases made the inference in regard to an unfair practices claim, which as explained above, involves consideration of different elements and requires a lower notice pleading standard in which a plausible inference may be more suitable. Second, the *Hill* court inferred that the alleged actions were taken to avoid a potentially lengthy foreclosure process and the *Bywater* court noted that the alleged actions took place before any foreclosure proceedings had been initiated. Here, however, Plaintiff has not alleged facts to support a finding that Defendants Safeguard and ATC have an interest in avoiding foreclosure proceedings or decreasing the length of a foreclosure process. Furthermore, the facts of this case demonstrate that the foreclosure process was proceeding for at least a year before Defendant Safeguard and ATC entered Plaintiffs' property.

Accordingly, because Plaintiffs' IFCA claim is also deficient for these reasons, the Court dismisses Count II without prejudice with leave to replead.

**IV.    Plaintiffs' Claims for Trespass and Conversion (Counts III-VI)**

Plaintiff has sued Safeguard and ATC for trespass and conversion. (R.1, Counts III-VI, ¶¶ 68-85.) Because these torts are based on similar facts, the Court addresses them together.

As to Counts III and IV, under Illinois law, "trespass is an intentional invasion of the exclusive possession and physical condition of land." *Freese v. Buoy*, 578 N.E.2d 1176, 1182 (Ill. App. Ct. 1991). Further, a "person who aids, abets, assists, or directs the commission of a trespass by another is liable for trespass." *Dietz v. Ill. Bell Tel. Co.,* 507 N.E.2d 24, 26 (Ill. App. Ct. 1987).

As to Counts V and VI, "[c]onversion is the unauthorized deprivation of property from a person entitled to its possession." *See IOS Capital, Inc. v. Phoenix Printing, Inc.*, 808 N.E. 2d

606, 610 (Ill. App. Ct. 2004). To prove conversion, a plaintiff must establish the following

elements: "(1) the defendant's unauthorized and wrongful assumption of control, dominion, or

ownership over the plaintiff's personal property; (2) the plaintiff's right in the property; (3) the

plaintiff's right to immediate possession of the property, absolutely and unconditionally; and (4)

the plaintiff's demand for possession of the property." *Bill Marek's The Competitive Edge, Inc.

v. Mickelson Group, Inc.*, 806 N.E.2d 280, 285 (Ill. App. Ct. 2004).

Plaintiffs allege that on June 18, 2013, Safeguard and ATC forcibly entered their home

without their consent and changed the locks, rendered other locks inoperable, and removed

personal property. (R.1, ¶¶ 14-22, 24, 33-37, 63.) Plaintiffs allege that upon returning home

they found the lockbox installed on the Property. (R.1, ¶ 23.) Plaintiffs allege that during the

period of time from June 14, 2013 to June 22, 2013, no one other than Plaintiffs had a key to the

Property or otherwise had access to, or permission to access the Property. (R.1, ¶ 24.) Plaintiffs

also allege that no order had been issued allowing Defendants to access the Property, or remove

Plaintiffs' personal property from the same. (R.1, ¶ 25.)

Defendants argue that Plaintiffs do not have a claim for trespass because Plaintiffs did not

have the exclusive right to possess the property, because both Illinois and federal law require that

mortgagees protect and maintain properties in foreclosure. (*See* R.22, at 9 (citing 24 C.F.R. §

203.377; 720 ILSC 5/21-3(e-5) (1)-(3).)[8] These statutes, however, address responsibility of the

mortgagee to take "reasonable action to protect and preserve" property that has become "vacant

and abandoned." 24 C.F.R. § 203.377; *see also* 720 ILCS 5/21-3(e-5) (1)-(3) (absolving liability

for a mortgagee "in any civil action for money damages to the owner of *unoccupied and*

_____

[8] In their reply, Defendants Safeguard and ATC also argue that the terms of the Mortgage demonstrate that Plaintiffs did not have the exclusive right of possession because they were in default at the time in question. (*See* R.41, at 5-6.) The Court will not consider this argument, however, as Defendants should have raised it in their initial supporting memorandum. *See e.g., Darif v. Holder*, 739 F.3d 329, 336-337 (7th Cir. 2014) ("Arguments raised for the first time in a reply brief are waived").

*abandoned* residential ... property") (emphasis added).  Plaintiffs allege that when they left the

Property on June 14, 2013, it was secured and locked and contained their personal property, and

that the Property has at all times been used as Ms. McKenney-Becker's personal residence.

(R.1, ¶¶ 10, 18-20.)  A determination of whether the Property was vacant or abandoned or

whether Safeguard and ATC's alleged actions were reasonable is a fact issue that the Court

cannot determine on a motion to dismiss.  *See Flippin*, 2012 WL 3260449, at *2; *see also*

*Matthews*, 2005 WL 2387688, at *8 (allegations that defendant forcibly entered plaintiff's

property without consent and changed the locks held sufficient to defeat motion to dismiss

trespass claims).  Accordingly, these facts are sufficient to put Defendants on notice as to the

trespass claim against them.

Regarding Plaintiffs' claim for conversion, Defendants argue that there are no allegations

that Plaintiffs ever made a demand for possession of the personal property in question.  (*See*

R.22, at 10.)  Plaintiffs respond requesting leave to replead to include allegations that Defendants

informed them that their personal property was not recoverable, making demand futile.  (*See*

R.35, at 12.)  Futility under Illinois state law arises when a demand would be "fruitless" or

"useless" because "the defendant had sold or otherwise disposed of the property in question and

thus no longer had possession thereof."  *See In re Settlers' Housing Serv., Inc.*, 514 B.R. 258,

285 (N.D. Ill. June 30, 2014) (citing *Monroe Cnty. Water Co-op. v. City of Waterloo,* 437 N.E.2d

1237, 1239-40 (Ill. App. Ct. 1982) (collecting cases)).   Accordingly, the Court dismisses

Plaintiffs' conversion claims (Counts V and VI) without prejudice with leave to replead.

**CONCLUSION**

For the reasons stated above, the Court grants in part and denies in part Defendants

Safeguard and ATC's Motion to Dismiss and grants in part and denies in part Defendant Bank of

America's Motion to Dismiss.  The Court also denies Bank of America's motion for abstention

under *Colorado River*.


**DATED:  January 13, 2015**                     ENTERED

                                                 _____
                                                 AMY J. ST. EVE
                                                 United States District Court Judge